# Fuller's Appeal.

A., being mentally weak and in straitened circumstances, purchased from B. an interest in a silver mine in Montana, the agreement of sale containing a clause whereby it was provided that the vendee might at the expiration of a year elect to rescind the contract. In order to raise the purchase money A. gave a mortgage upon his homestead farm and paid the proceeds to B. B. did not, however, convey his interest in the mine to A. More than a year afterwards, A. died, expressing no dissatisfaction with his purchase. B. was appointed guardian of his minor children, and moreover, verbally assumed the payment of the mortgage on the homestead farm. Upon the filing of his account as guardian, it was found that B. claimed credit for certain payments of interest on the mortgage advanced by him. Exceptions were filed to those items, and the court disallowed them, surcharging B., moreover, with the amount of the mortgage. *Held*, that the decree was erroneous. If the endeavor to surcharge B. was based purely upon his verbal assumption of the mortgage, then admitting that the same was not within the probibition of the Statute of Frauds, the remedy was not in the Orphans' Court, but in the Common Pleas by means of a common law action instituted by the representatives of A. If the right thus to surcharge was based in addition upon the obligation of B. to repay the purchase money of the silver mine, which obligation was to be regarded as the consideration for the agreement on his part to assume payment of the mortgage, this was a contract which was also clearly not enforceable in the Orphans' Court. The proper remedy was an action by the representatives of A. against B. to.recover damages for breach of contract in failing to convey to A. the interest in the silver mine purchased by him.

October 13th 1881. Before SHARSWOOD, C; J., MERCUR, GORDON, PAXSON, TRUNKEY, and STERRETT JJ. GREEN, J., absent.

APPEAL ' of James Fuller from a decree of the Orphans' Court of *Allegheny county*, sustaining exceptions to his account as guardian of Richard A. and Mary C. Beatty, minor children of Robley D. Beatty, deceased: Of October and November Term 1881, No. 93.

Robley D. Beatty died August 12th 1876, intestate, leaving surviving a widow and the above named two minor children. Alexander Dempster was appoined administrator, and James Fuller was appointed guardian of the children. On September 25th 1880, Fuller filed his first and final account, and about the same time, on his own petition, he was discharged from his position as guardian, and one Bigelow was appointed his successor. The latter filed exceptions to Fuller's account, the only one material to this case being to certain credits claimed by the accountant for interest on a mortgage, paid at sundry

times by the accountant, amounting to $1,890. Testimony was taken, which showed the following facts :—By articles of agreement dated April 29th 1875, Fuller agreed to sell to Robley D. Beatty four and one-half tenths of the Franklin Silver Lode in Deer Lodge County, Montana, for the sum of $10,000 in cash. The agreement contained the following clause :—"Also, if the said party of the first part, R. D. Beatty, is dissatisfied with his purchase of the said four and one-half (4½) tenths of the said 'Franklin' Silver Lode, at the expiration of one year from' this date, the said James Fuller and Belle C., his wife, agrees to pay back the full amount, ten thousand (10,000) dollars with interest on the same."

On the date of the agreement, Mr. Beatty paid Fuller' $4,000 on account, and on December 11th 1874, the balance in full. $6,000. Mr. Beatty raised the $10,000 by a mortgage of his homestead farm. At the time that Beatty agreed to purchase 4½ tenths of said mine, Fuller held the equitable title to the whole claim, the legal title to which was conveyed to him by deed dated Febuary 1st 1876. Fuller testified that he paid $20,000 in cash for this property. Fuller did not convey the legal title to the 4½ tenths to Mr. Beatty, who died August 12th 1876 (within one year after the date of the agreement), without having expressed any dissatisfaction with the purchase. The widow and sister of Mr. Beatty testified that for two or three years prior to his death he was not fit to attend to business.

On behalf of the exceptant, Mr. Dempster, Beatty's administrator, Mrs. Beatty, the widow, and one or two other witnesses testified to the effect that after the death of Mr. Beatty and within one year from the date of the agreement, Fuller stated that he would assume payment of the said mortgage. It did not appear, however, that the administrator or widow, made any demand for the rescission of the original agreement under the clause above quoted. The witnesses could not remember the language used by Fuller, but concurred in stating that the effect of it was to give them to understand that the estate should not lose by the mortgage and that he would assume its payment. Fuller himself testified that he did not agree to assume the mortgage, but that, the estate being embarrassed, he said he would advance money or would sell the mining property at a sacrifice, if necessary, or would do anything that was in his power to protect the estate, and prevent the loss of the homestead ; and that it was in pursuance of such statements that he advanced the money to pay the interest on the mortgage, for which he claimed credit in his account.

The court was of the opinion, first, "that the contract itself was one, which in Mr. Beatty's mental and financial condition should not have been made ;" secondly, that the evidence was

sufficient to establish an assumption by Fuller to pay the mortgage, and that "every consideration of justice and prudence looked to an election to accept the cash invested instead of the mining property; and equity will regard that as done which ought to have been done." The court therefore entered a decree surcharging the accountant with $11,013.33, the amount of said mortgage, with interest. From this decree, the appellant took this appeal.

*George Shiras, Jr.*, for appellant.—The right to rescind was unilateral on the part of Beatty, and as he died without having exercised it, it died with him. If it had been mutual, there might have been a surviving right to rescind by the widow and heirs. But the evidence showed that the widow did not attempt to exercise such right, and Fuller, who, as guardian, represented the heirs, minors, could not on their behalf exercise a discretion to rescind a contract, to which he, as an individual, was the other party. The test is, could he have rescinded as guardian, if the property had risen in value?

But the Orphans' Court had no jurisdiction, upon the settlement of the guardian's account, to decree a rescission of the contract, thereby turning a minors' property in real estate into a mere claim against the guardian.

*Negley* (with whom was *Bruce*), for the appellee.—The finding of fact by the court below that Fuller had assumed payment of the mortgage will not be disturbed by this court. All the circumstances, attending the inception of the contract, and subsequent matters, including the fact that Fuller made no conveyance of the legal title to Beatty although he himself obtained the legal title to the whole property more than six months before Beatty's death, indicated an intention by both parties to rescind a contract, which, in the language of the court below, "in Mr. Beatty's mental and financial condition never should have been made."

Mr. Justice GORDON delivered the opinion of the court, November 7th 1881.

We cannot agree with the court below in its surcharge of the account of the appellant, as guardian of the minor children of Robley D. Beatty, in the sum of $10,000, the balance of the Cassidy mortgage. He was charged with this amount on the ground, that, after Beatty's death, he assumed, in some conversations which he at different times had with the widow and administrator, to pay this mortgage.

But conceding this assumption to have been clear and distinct, and not within the prohibition of the Act of the 26th of April 1855, yet we cannot see how a contract of this kind can be en-

[Fuller's Appeal.]

forced by a decree of the Orphans' Court.. There is in this no money or other assets of the wards; it is at best but an agreement with the representatives of Beatty's estate, which must be enforced by ordinary process in the Common Pleas.

But there is an alleged consideration back of this assumption; were it not so the undertaking to pay the mortgage would be altogether worthless. That consideration arises from the agreement between the appellant and Robley D. Beatty, of the 29th of November 1875, by which the appellant agreed to sell to Beatty four and one-half tenths of the "Franklin Silver Lode, in Deer Lodge county, Territory of Montana," and on which Beatty paid to the appellant $10,000.

By the same paper it was agreed that if Beatty became dissatisfied with his purchase, the appellant was, within one year from the date of the agreement, to refund the money so paid by Beatty. It is now alleged that Dr. Fuller, the appellant, somehow became liable to repay this money, and thus arises the consideration for the assumption of the mortgage. Let all this be admitted, and we have but an agreement by Fuller to pay the money due on his contract in a particular manner; that is to say, by the payment of the mortgage which Beatty executed in order to raise the money paid to Fuller. But how was this contract to be enforced? Certainly not by a decree of the Orphans' Court, which necessarily presupposes that this claim had passed to the guardian as part of the liquidated assets of his wards, nor even by process in equity to compel him to pay the mortgage, but by an action at law brought by the representatives of Beatty's estate for the recovery of the damages resulting from a breach of the contract.

We think, therefore, as to this item, the Orphans' Court exceeded its jurisdiction in attempting to try and dispose of a question involving, at most, only the breach of a contract made by the appellant with the decedent, in his lifetime, and which must of necessity pass to, and be disposed of by, the representatives of Beatty's estate.

The remaining exceptions are dismissed; for though we are not without doubt as to some other of the charges against the appellant, we cannot certainly say that the court erred in allowing them.

> The decree of the court is now reversed and set aside as to the surcharge in the appellant's account of $10,000 ." on account of mortgage on homestead," and confirmed as to the balance of said account. And it is further ordered that the appellees pay the costs of this appeal.

STERRETT, J., dissents.